**Hearing Date: May 22, 2018**
**Time: 11:00 a.m.**

WILK AUSLANDER LLP
Andrew P. Lederman, Esq.
1515 Broadway, 43rd Floor
New York, New York 10036
(212) 981- 2300

*Counsel for Baron Associates*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                  :      Chapter 13
In Re:                                       :
                                                  :      Case No. 1-18-40130-cec
Shanta Kumari                            :
                                                  :
                          Debtor.        :
--------------------------------------------------------x

## RESPONSE TO DEBTOR'S OBJECTION
## TO CLAIM NO. 2 FILED BY BARON ASSOCIATES

      Baron Associates ("Baron"), by its attorneys, Wilk Auslander LLP, as and for its response to the Debtor's Objection to Claim No. 2 filed by Baron Associates (the "Objection") sets forth as follows:

### PRELIMINARY STATEMENT

      The Debtor's objection is the proverbial "Hail Mary" attempt to relitigate the same issues that were decided on the merits in Baron's favor by the State Court in Baron's foreclosure action. It rehashes the same issues the Debtor raised in its State Court pleadings and then, with absolutely no basis in fact, claims that Baron Associates is not a valid New York partnership. It is well settled in this Circuit that the *Rooker-Feldman* doctrine prohibits this Court from reviewing state court judgments. The Objection asks this Court to do exactly that. This Court has previously recognized that it is jurisdictionally barred from doing so. Moreover, as the accompanying affidavit of Ronald Rettner demonstrates, Baron Associates is a valid, existing

1

New York Partnership. As such, the Debtor's objection should be denied in its entirety.

## FACTUAL BACKGROUND

1. Baron's claim arises as a result of a default under a Promissory Note and Loan Agreement entered into by and between Global M&A Network LLC and Baron dated October 6, 2008.

2. Baron is the also the holder of a Collateral Security Mortgage Note made by Govin Lal Sahu, Lajwanti Sahu and Shanta Kumari, the Debtor herein, and Baron dated October 6, 2008.

3. In addition, the Debtor guaranteed the performance and compliance of all payments and obligations under the Promissory Note and Loan Agreement by Loan Guaranty dated October 6, 2008.

4. On or about February 3, 2012, Baron commenced a Foreclosure Action in Supreme Court of the State of New York, County of Kings ("State Court") for the real property located at 225 79th Street Brooklyn, New York (the "Property").

5. On or about April 12, 2012, Baron filed, inter alia, a Motion for Summary Judgment on its foreclosure claim.

6. On or about January 14, 2013, an Order of Reference was entered by the Supreme Court.

7. Thereafter, and on or about April 15, 2014, a Judgment of Foreclosure and Sale was entered in the State Court for the Property.

## THE DEBTOR'S ORDERS TO SHOW CAUSE

8. In an effort to stay the foreclosure sale, which had been scheduled for October 2, 2014, on or about September 29, 2014, the Debtor filed an Order to Show Cause with the State

Court seeking a stay of the foreclosure sale and a vacatur of the foreclosure judgment.

9. Baron opposed the motion, which subsequently was resolved pursuant to a "So Ordered" stipulation among the parties that provided for a payment to Baron of $235,000.00 by August 24, 2015.

10. The Debtor defaulted on the agreement and did not pay the required $235,000.00.

11. Baron then renoticed the foreclosure sale, as required under the RPAPL for September 22, 2016.

12. Once again on the eve of the sale and on or about September 20, 2016, the Debtor filed a second Order to Show in the State Court seeking, among other things, an order vacating the judgment of foreclosure.

13. On September 28, 2017, Justice Mark I. Partnow, Justice of the New York Supreme Court, issued a Decision and Order ("**Decision**"), which, among other things, denied the Debtor's request for vacatur of the Foreclosure Judgment. A copy of the September 28, 2017, Decision is attached hereto as Exhibit A. A copy of the payoff letter Baron was required to send to the Debtor's attorney, pursuant to the Decision, is attached hereto as Exhibit B.

14. The Debtor did not make payment as required under the payoff letter.

15. Significantly, the Debtor made many of the same arguments in its Orders to Show Cause as it has in its Objection, which were all addressed and denied by the State Court.

### THE ROOKER-FELDMAN DOCTRINE DEPRIVES THIS COURT JURISDICATION TO REVIEW THE FORECLOSURE ACTION

16. As this Court is well aware, the *Rooker-Feldman* doctrine deprives a federal court of subject matter jurisdiction to review the judicial determinations of state courts. *See Wilson v. Deutsche Bank Nat'l Trust (In re Wilson)*, 410 F. App'x 409, 410 (2d Cir.2011); *In re Ward*, 423 B.R. 22, 27 (Bankr. E.D.N.Y. 2010) ("The *Rooker–Feldman* doctrine 'strip[s] federal subject

matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions." (internal citations omitted). *Rooker-Feldman* applies when the following conditions are met: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) the plaintiff invites district court review of the judgment; and (4) the state court judgment was rendered before the district court proceedings commenced. *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock v. Albany Cty. Bd. Of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).

17. A determination as to whether the *Rooker-Feldman* doctrine applies is almost always accompanied by an analysis under the *res judicata* and collateral estoppel doctrines. *Res judicata* provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994) (internal quotation marks omitted). In New York, *res judicata* requires a showing that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the party against whom res judicata is invoked or its privy; and (3) the claims asserted were or could have been asserted in the previous action. *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). It also bars defenses that might have been litigated in the prior action, whether or not those defenses were actually raised. *In re Buckskin Realty Inc.*, No. 1-13-40083-NHL, 2016 WL 5360750, at *6 (Bankr. E.D.N.Y. Sept. 23, 2016) (Lord, J.) (citing *Swiatkowski*, 745 F. Supp. 2d at 171.

18. The preclusive effect of *res judicata* is narrower than that of collateral estoppel. See *Swiatkowski*, 745 F. Supp. 2d at 170 "Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action

and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Swiatkowski*, 745 F. Supp. 2d at 168 (citing *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted)).

19.     This Court, relying on firmly established Second Circuit precedent, has more than once applied the *Rooker-Feldman*, res judicata, and collateral estoppel doctrines to bar a borrower/debtor from challenging the validity of state court foreclosure judgments. *See In re GEL, LLC* 495 B.R. 240, 246, 247 (Bank. EDNY 2012) ("This Court lacks jurisdiction to review cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." (cite omitted). Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine (cite omitted). It thus appears that the Debtors are procedurally barred from collaterally attacking the Foreclosure Judgment"); *In re Merchi* 518. B.R. 705, 712, 713 (Bankr. E.D.N.Y. 2014) (The *Rooker–Feldman* doctrine is a jurisdictional tenet that "strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions." (cites omitted.). Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." (cites omitted)). See also *In re Sanders* 408 B.R. 25, 33 (E.D.N.Y. 2019) ("The *Rooker-Feldman* doctrine prevents this Court from reviewing the validity of the Foreclosure Judgment. The *Rooker-Feldman* doctrine applies in this case because the Debtor lost in the state court foreclosure action, the Foreclosure Judgment was rendered before the Debtor commenced the …Current Case, and the Debtor seeks this Court's review of the Foreclosure Judgment in the context of her motion to vacate the Lift Stay Order. … Accordingly, the *Rooker-Feldman* doctrine does not permit this court to disregard the

Foreclosure Judgment." (cite omitted)).

20. As set forth earlier herein, the issues raised in the Objection were previously litigated in the State Court. The State Court considered and dismissed all of the Debtor's arguments and authorized Baron to proceed to a foreclosure sale. Moreover, the State Court entered the Foreclosure Judgment after numerous hearings on the merits including two Orders to Show Cause filed by the Debtor seeking to vacate the Foreclosure Judgment.

21. Since the State Court has repeatedly rejected the Debtor's meritless arguments and entered the Judgment of Foreclosure, *Rooker-Feldman*, res judicata, and collateral estoppel all preclude the Debtor from once again contesting Baron's authority to enforce its rights under the Note and Mortgage.

## **BARON IS ENTITLED TO RECOVER ITS LEGAL FEES**

22. Paragraphs 12 and 18 of the Collateral Security Mortgage executed by the Debtor, among others, states in relevant part:

> Paragraph 12 "That if any action or proceeding be commenced (except an action to foreclose this mortgage or to collect the debt secured thereby), to which action the mortgagee is made a party, or in which it becomes necessary to defend or uphold the lien of this mortgage, all sums paid by the mortgagee for the expense of any litigation to prosecute or defend the rights and lien created by this mortgage **(including reasonable counsel fees)** shall be paid by the mortgagor…. (Emphasis supplied).
>
> Similarly, paragraph 18 states, "The Mortgagor agrees to bear all expenses, **including attorneys' fees,** incidental to the enforcement of any provisions herein, or to the enforcement, compromise or settlement of any of the collateral pledged hereunder, and for the curing thereof, or in defending or asserting the rights and claims of the Mortgagee in respect thereof, by litigation or otherwise, and the Mortgagor agrees to pay to the mortgagee any and all expenses incurred….. (Emphasis supplied).[1]

---

[1] A copy of the Collateral Security Mortgage is attached hereto as Exhibit C.

23. Moreover, Section 506(b) of the Bankruptcy Code provides:

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided for **under the agreement** or State statute under which such claim arose. (Emphasis supplied).

24. The legislative history of 506(b) states, "Subsection (b) codifies current law by entitling a creditor with an oversecured claim to any reasonable fees, costs or charges under the agreement under which the claim arose. These fees, costs, and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim. [ Ed. Note: The Senate Report adds the words "(including attorney's fees), " after "reasonable fees".] Section 506(b) of the House Amendment adopts language contained in the senate amendment and rejects language contained in H.R. 8200 as passed by the House. **If the security agreement between the parties provides for attorneys' fees, it will be enforceable under title 11, notwithstanding contrary law, and is recoverable from the collateral after any recovery under section 506(c).** [124 Cong.Rec. H 11,095 (Sept. 28, 1978); S 17,411 (Oct. 6, 1978).] (Emphasis Supplied).

25. The cases cited by the Debtor for the proposition that Baron is not entitled to recover its legal fees, are inapposite to the facts herein. In *FCS Advisors, Inc. v. Fair Fin Co.* 605 F.3d 144,145 (2d Cir.2010), the court addressed the ability of a party to recover post-judgment interest at the federal rate provided for under 28 U.S.C. § 1961(a) or at the rate provided for under New York law where the court's jurisdiction is premised on the diversity of the citizenship of the parties and the contract giving rise to the action contains a general choice-of-law provision

requiring the application of New York law. The issues and equities before this Court are significantly different from those before the *FCS* court. In In re *Koloch* 416 B.R. 375 (Bankr. E.D.N.Y. 2009), the court addressed the validity of a mortgagee's claim in light of payments made by the debtor, which were not reflected in the mortgagee's proof of claim. In the case at bar, there is no dispute on the amount of the foreclosure judgment. And *Youngman v. Fleet* 467 F.3d 337, (3rd Cir. 2006), a third circuit case that is not controlling in this District, addressed New Jersey state law, which is inapplicable herein.

26.     Finally, in In re *Schlett* 36 B.R. 236, (Bankr. Alaska 1983), the court recognized that attorneys' fees are ordinarily not recoverable unless there is a contractual provision in the documents authorizing such an award. Id. at 238. Here, we have such provisions. Further, the mortgagee in *Schlett* was not an oversecured creditor, but was a partially secured creditor. As a result the protections granted under Section 506(b) were not available to it. Had it been an oversecured creditor, the court recognized that under §506(b) …"because of the unique nature of bankruptcy procedure, a secured creditor may better his position through litigation yet may not be the prevailing party. In such a situation, an over-secured creditor should be entitled to recover reasonable attorney's fees provided they are in the scope of an agreement that is enforceable under § 506(b). *Id.*at 239.

27.     Unlike the cases cited by the Debtor, we respectfully suggest that this Court follow In re *Elmwood Farm, Inc.* 19 B.R. 338 (Bankr. S.D.N.Y. 1982) in which the oversecured creditors attorneys' fees were granted. The court recognized that, "the holder of a secured claim may collect reasonable attorneys' fees under Code § 506(b) if the security agreement in question

8

expressly provides for such fees. (citing to *In re Smith* 4 B.R. 12, (Bankr. E.D.N.Y. 1980).)[2]

28. Further, the case of In re *SUN 'N FUN WATERPARK LLC* 408 B.R.361 (BAP. 10th Cir. 2009) is instructive. In it, the court addressed the right of a secured creditor to recover post-petition attorneys' subsequent to obtaining a foreclosure judgment, but prior to a foreclosure sale of the collateral having been completed. Initially the court distinguished the factual circumstances in the cases that denied allowance of postpetition fees. In those cases, the sale of the collateral had already occurred, which did not take place in the case before it, nor has it occurred in the case at bar. The court then recognized that in order for § 506 to apply, the claim had to be secured by a consensual lien. Here we have a mortgage and note entered into by the parties. The court, at 369, then addressed the issue of merger and stated, "A mortgage lien on real estate *is not merged* into a decree of foreclosure, nor is it extinguished by the mere rendition of a decree of foreclosure." The mortgage lien is extinguished "only by a sale." (citing to *Bank of Panhandle v. Hill* 965 P.2d 413, 416 (Okla.Civ.App.1998). The same holds true herein. No sale has occurred. Consequently, the court reversed the Bankruptcy Court's decision and remanded the matter for a determination as to the amount and reasonableness of the secured lender's postpetition fees, costs and out of pocket expenses. The same determination should be made herein.

29. In addition, should this Court follow the Debtor's argument to its logical conclusion, then Baron will be penalized as a result of its actions to enforce its rights under the Note and its Mortgage. Baron should not denied its ability to recover its attorneys' fees because it has sought to enforce its rights and has obtained a foreclosure judgment. Congress could not

---

[2] The Debtor's Schedules value the Property at $1,200,000 and estimates liens on the Property in the amount of $378,966.00, with Baron's claim valued at $235,000. However, even if this Court were to allow Baron's Proof of Claim in its full amount of $464,689.42, Baron is still an oversecured creditor.

9

01030553

have intended such as result when enacting Bankruptcy Code § 506(b).

30.     Here, the Collateral Mortgage Security Agreement clearly provides for Baron to recover its legal fees in connection with its enforcement of the Mortgage, which this Court should allow in its entirety.

## Conclusion

The Debtor's claims are unsupported allegations that have been litigated and relitigated in the State Court. After numerous hearings and Orders to Show Cause, which raised and re-raised the same issues brought before this Court, the State Court entered a Judgment of Foreclosure. As this Court has recognized on more than one occasion, under *Rooker-Feldman* this Court does not have jurisdiction to relitigate the State Court foreclosure judgment. Moreover, the Debtor's claim that Baron Associates is not a valid partnership has no basis in fact as evidenced by Ronald Rettner's affidavit. Finally, Baron should be awarded its attorneys' fees as provided for in the Collateral Security Mortgage and under Bankruptcy Code § 506(b). Failure to do so will result in the unwarranted situation in which a secured creditor with a judgment will be denied its attorneys' fees while a secured creditor without a judgment will be granted those same fees.

**WHEREFORE**, for the reasons set forth herein and in the accompanying affidavit of Ronald Rettner sworn to on May 7, 2018, it is respectfully requested that the Debtor's Objection to Claim No. 2 filed by Baron Associates be denied in its entirety.

Dated: New York, New York
      May 15, 2018

                        Wilk Auslander LLP
                        *Attorneys for Baron Associates*

                    By: */s/Andrew P. Lederman*
                        Andrew P. Lederman
                      1515 Broadway
                      New York, New York 10036
                      Tel. 212-981-2300